**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YOLANDA PITRE and MIKAELA KINDERMAN, individually and on behalf of all others similarly situated, | Case No. 1:26-cv-5759 |
| Plaintiffs, | CLASS ACTION |
| v. | |
| CHOBANI, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Yolanda Pitre and Mikaela Kinderman ("Plaintiffs"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through their attorneys, bring this Class Action Complaint against Defendant Chobani, LLC ("Chobani" or "Defendant"), and complain and allege upon personal knowledge as to themselves and information and belief as to all other matters.

**INTRODUCTION**

1.     This consumer class action arises out of Chobani's misbranding and false and misleading advertising of its Chobani 20G Protein Greek yogurt products sold in 32-ounce, multi-serving containers (the "Product" or "Products") as containing 20 grams of protein per serving. Defendant's advertisements, including its labels, represent the Products as providing 20 grams of protein per serving (the "20G Protein Claims"), but these representations are unlawful, false, misleading, and likely to deceive the reasonable consumer because the Products do not contain 20 grams of protein per serving when the serving size is properly calculated and are therefore less protein dense than advertised.

2.     Instead, rather than providing 20 grams of protein per properly calculated serving, the Products contain less protein per serving than Chobani represents. Chobani achieves its "20G Protein" representation by using an inflated serving size for its 32-ounce, multi-serving containers, causing consumers to believe the Products provide 20 grams of protein per serving when, in fact, they do not.

3.     Nonetheless, consumers reasonably understand the "20G Protein" representations on the Products' labels and packaging to mean that the Products contain 20 grams of protein per properly calculated serving. This is because nutrition facts are required by regulation to be stated in serving sizes. Chobani knows that protein density is material to consumers and that consumers purchasing high-protein yogurt products rely on front-label protein representations when deciding which products to buy. Accordingly, reasonable consumers are likely to believe that the Products provide 20 grams of protein per serving, when the Products actually contain less than 20 grams of protein per properly calculated serving.

4.     As a result of Defendant's deceptive and unfair practices, Plaintiffs and Class members did not receive that which was promised.

5.     Plaintiffs bring this class action on behalf of themselves and all other similarly situated consumers to recover the amounts Plaintiffs and Class members overpaid, to prevent Defendant from continuing to engage in its unlawful, deceptive, and unfair conduct, and to correct the false perception it has created in the marketplace through its misrepresentations and omissions of material facts.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) because this case is brought as a class action under Fed. R. Civ. P. 23, at least

2

one proposed class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds $5,000,000, excluding interest and costs.

7.    This Court has general personal jurisdiction over Defendant because Defendant maintains its global headquarters in this District.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, is subject to personal jurisdiction in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

### Plaintiff Yolanda Pitre

9.    Plaintiff Pitre is a citizen and resident of San Mateo, California.

10.    Plaintiff Pitre purchased Chobani's 20G Protein Greek yogurt in a 32-ounce, multi-serving container several times. As best as she can recall, Plaintiff Pitre purchased the Chobani 20G Protein Greek yogurt in 32-ounce containers approximately three times in late 2025 from a Safeway grocery store in San Mateo, California. She purchased each Product after reading the Product's label representing that it contained 20 grams of protein per serving.

11.    Plaintiff Pitre purchased the Product believing that it contained 20 grams of protein per properly calculated serving. Plaintiff Pitre did not expect that the Product's 20 grams of protein claim was based on an inflated serving size rather than the customary serving size, or that the serving size and protein levels were calculated in violation of FDA rules. Plaintiff Pitre therefore did not receive that which was promised.

3

12.    Had Plaintiff Pitre known that the Product did not contain the density of protein that Chobani represented based on the properly calculated serving size, she would not have purchased the Product or would have paid less for the Product.

***Plaintiff Mikaela Kinderman***

13.    Plaintiff Mikaela Kinderman is a citizen and resident of Chicago, Illinois.

14.    Plaintiff Kinderman purchased Chobani's 20G Protein Greek yogurt in a 32-ounce, multi-serving container several times. Plaintiff Kinderman purchased the Chobani 20G Protein Greek Vanilla yogurt in the 32-ounce container on May 3, 2026, via an online order from Jewel-Osco supermarket, for in-person pickup at the 1340 S. Canal St. Chicago, IL 60607 location. She purchased the Product after reading the Product's description representing that it contained 20 grams of protein per serving.

15.    Plaintiff Kinderman purchased the Product believing that it contained 20 grams of protein per properly calculated and standardized serving. Plaintiff Kinderman did not expect that the Product's 20 grams of protein claim was based on an inflated serving size rather than the customary serving size, or that the serving size and protein levels were calculated in violation of FDA rules. Plaintiff Kinderman therefore did not receive that which was promised.

16.    Had Plaintiff Kinderman known that the Product did not contain the density of protein that Chobani represented based on the properly calculated serving size, she would not have purchased the Product or would have paid less for the Product.

***Defendant Chobani, LLC***

17.    Defendant Chobani, LLC is a Delaware limited liability company that maintains its global headquarters at 200 Lafayette Street, New York, New York 10013. It may be served through its registered agent at: Corporation Service Company, 80 State Street, Albany, New York 12207.

**FACTUAL BACKGROUND**

18.    Chobani is one of the largest and most recognizable yogurt companies in the United States. Chobani describes its yogurt as "America's No. 1 yogurt brand," and its products are sold throughout North America.[1]

19.    Chobani's business generates billions of dollars in annual revenue. In 2024, Chobani reportedly generated approximately $3 billion in revenue.[2] In 2025, Chobani expected to generate approximately $3.8 billion in net sales, representing a 28% increase from the prior year.[3]

20.    Chobani has continued to expand its manufacturing capacity and product portfolio to capitalize on consumer demand for yogurt, dairy, and high-protein products. In 2025, Chobani announced substantial expansion plans, including a $1.2 billion investment in a new dairy processing plant in New York and a $500 million expansion in Idaho.[4]

21.    In or about October 2024, Chobani announced an expansion into the high-protein category with a line of products marketed around specific protein amounts, including Chobani 20G Protein Greek yogurt. Chobani promoted this product line as meeting consumer demand for convenient high-protein foods.[5]

---

[1] Chobani, LLC, *Americans Are Prioritizing Protein Now More Than Ever, but Study Shows Significant Gaps in Nutrition Knowledge*, PR Newswire (Dec. 4, 2024), https://www.prnewswire.com/news-releases/americans-are-prioritizing-protein-now-more-than-ever-but-study-shows-significant-gaps-in-nutrition-knowledge-302321942.html.

[2] Brian Berk & Barbara Harfmann, *Annual Dairy 2025 Top 100: Chobani and Fairlife Continue Ascent on Dairy Foods' Top 100 List*, Dairy Foods (Aug. 8, 2025), https://www.dairyfoods.com/articles/98403-annual-dairy-2025-top-100-chobani-and-fairlife-continue-ascent-on-dairy-foods-top-100-list.

[3] Reuters, *Yogurt Maker Chobani Raises $650 Million in Latest Funding Round* (Oct. 16, 2025), https://www.reuters.com/business/yogurt-maker-chobani-raises-650-million-latest-funding-round-2025-10-16/.

[4] *Id.*

[5] *Chobani Expands High-Protein Line*, Dairy Foods (Oct. 8, 2024), https://www.dairyfoods.com/articles/97627-chobani-expands-high-protein-line.

22.    The Products at issue here are Chobani 20G Protein Greek yogurt products sold in 32-ounce, multi-serving containers. The Products are sold through major retailers, including national retailers such as Target and Walmart.[6]

23.    The Products include Chobani 20G Protein Greek yogurt sold in 32-ounce, multi-serving containers in plain, vanilla, and any other varieties bearing the same or substantially similar 20G Protein Claims. Each challenged variety uses the same or substantially similar front-label protein density representation, and uses an improperly calculated serving size of 3/4 cup or 190 grams, and in order to represent that it provides 20 grams of protein per serving.

24.    Chobani prominently markets the Products as "20G Protein." Claims such as this one regarding nutrition content in a multi-serving container relate to serving size, as required by regulation and consumers believe this to be the case. The Products' front labels make the "20G Protein" representation central to the Products' name, identity, and marketing. Representative packaging of the Products appears below:

 

---

[6] *Chobani 20g Protein Vanilla Greek Yogurt—32oz.*, Target, https://www.target.com/p/chobani-high-protein-vanilla-greek-yogurt-32oz/-/A-90302029 (last visited June 22, 2026); *Chobani 20G Protein Low-Fat Vanilla Greek Yogurt 32 oz. Tub, Zero Added Sugar*, Walmart, https://www.walmart.com/ip/Chobani-20G-Protein-Lowfat-Greek-Yogurt-Vanilla-32oz/15527267238 (last visited June 22, 2026).

25.     Chobani also represents in the Products' Nutrition Facts panels and retailer product pages that the Products provide 20 grams of protein per serving. For example, retail listings for the 32-ounce Products state that the serving size is 3/4 cup, or 190 grams, and that the Products contain 20 grams of protein per serving.[7]

26.     Protein density is material to consumers who purchase high-protein foods. Protein density refers to the amount of protein a food provides for a given amount of product, such as per serving, per ounce, per gram, or per calorie. A more protein-dense product allows consumers to obtain more protein without eating a larger amount of the product. Consumers increasingly seek foods that provide more protein, and food manufacturers, including Chobani, have responded by placing protein claims prominently on product labels and advertising.

27.     The importance of protein density is supported by nutritional research. Higher protein-density diets are associated with greater diet quality and micronutrient intake in healthy young adults.[8]

28.     Consumers seeking high-protein foods often do so because they want foods that deliver more protein in a convenient, efficient, and nutrient-dense form. For those consumers, the amount of protein in a properly calculated serving is important because it communicates how protein-dense the product is and allows consumers to accurately compare one product against another.

29.     Chobani's "20G Protein" representations are protein-density claims. By representing that the Products provide 20 grams of protein per serving, Chobani represents to

---

[7] *Chobani 20g Protein Vanilla Greek Yogurt—32 oz.*, *supra* note 6.
[8] Jess A. Gwin et al., *Higher Protein Density Diets Are Associated with Greater Diet Quality and Micronutrient Intake in Healthy Young Adults*, 6 Frontiers in Nutrition 59 (2019), https://doi.org/10.3389/fnut.2019.00059.

consumers that the Products are sufficiently protein-dense to provide 20 grams of protein in a lawful, properly calculated serving.

30.     Standardized serving sizes are important because they allow consumers to compare the nutrient density of similar products. If a manufacturer inflates the serving size, the product appears to provide more protein per serving than it actually provides and appears more protein-dense than it really is.

31.     Chobani is aware that consumers prioritize protein. In December 2024, Chobani released survey results stating that 85% of Americans wanted to increase their protein intake and that 74% of Americans prioritized the amount of protein per serving when evaluating daily protein intake.[9]

32.     Chobani's survey also showed that consumers have gaps in their understanding of protein and nutrition. According to Chobani, 26% of Americans admitted they did not know the right amount of protein to consume, and less than half of Americans said they were knowledgeable about differences between different types of protein.[10]

33.     Industry data likewise confirms that consumer demand for protein has increased. CoBank reported that 59% of American consumers sought to consume more protein in 2022, 67% did so in 2023, and 70% did so in 2025.[11] CoBank further reported that high-protein label claims can command a price premium of up to 12%.[12]

---

[9] *Americans Are Prioritizing Protein Now More Than Ever*, *supra* note 1.
[10] *Id.*
[11] Corey Geiger, Abbi Prins & Billy Roberts, *Dairy Poised to Help Meet Consumers' Growing Demand for Protein*, CoBank (Jan. 23, 2026), https://www.cobank.com/knowledge-exchange/dairy/dairy-poised-to-help-meet-consumers-growing-demand-for-protein.
[12] *Id.*

34.     Chobani's own statements confirm that the "20G Protein" name was designed to communicate a simple and literal message to consumers. Chobani's Senior Vice President of Research and Development stated that the product's name was intended to be "simple[] and literal" because it is "a Greek yogurt that will give you 20 grams of protein."[13]

35.     The Products are packaged in 32-ounce, multi-serving containers. Unlike a single-serving container, a 32-ounce tub is intended to provide multiple servings, and the amount of protein per serving depends on the serving size Chobani declares on the label.

36.     The Federal Food, Drug, and Cosmetic Act ("FDCA") and its implementing regulations establish uniform requirements governing the labeling of packaged foods sold throughout the United States.

37.     Under the FDCA, a food is misbranded if "its labeling is false or misleading in any particular."[14]

38.     Federal regulations define an express nutrient-content claim as any direct statement about the level or range of a nutrient in a food.[15] The representation "20G Protein" is a direct statement about the amount of protein in the Products and therefore constitutes an express nutrient-content claim.

39.     Although nutrient information appearing within a Nutrition Facts panel is not itself treated as a nutrient-content claim, the same information appearing elsewhere on a product's label or labeling is a nutrient-content claim subject to the federal requirements governing such claims.[16]

---

[13] Dawn Kawamoto, *Inside Look: Chobani Relaunches a Protein-Packed Yogurt Drink*, InnoLead (June 5, 2025), https://www.innovationleader.com/inside-look/chobani-strategy/.
[14] 21 U.S.C. § 343(a)(1).
[15] 21 C.F.R. § 101.13(b).
[16] 21 C.F.R. § 101.13(c).

Chobani prominently displays the 20G Protein Claims outside the Nutrition Facts panel on the Products' principal display panels and throughout their labeling and marketing.

40.    A nutrient-content claim may not be made on the label or labeling of a food unless it complies with 21 C.F.R. § 101.13 and other applicable federal labeling regulations.[17] Moreover, even where a statement of the amount of a nutrient does not implicitly characterize the nutrient's level, the statement is permitted only if it is not "false or misleading in any respect."[18]

41.    Any food bearing a nutrient-content claim must provide nutrition labeling in accordance with 21 C.F.R. § 101.9.[19]

42.    Under 21 C.F.R. § 101.9(b), all nutrient quantities must be declared in relation to a serving. The declared serving size must be determined from the applicable reference amount customarily consumed and in accordance with the procedures prescribed by federal regulation.[20]

43.    The FDA has established a reference amount customarily consumed ("RACC") of 170 grams for yogurt.[21]

44.    Because the Products are nondiscrete bulk products sold in multi-serving containers, their serving size must be the amount expressed in a common household measure that most closely approximates the 170-gram reference amount.[22]

45.    When cups are the appropriate household measure, the serving size must be expressed in increments of either 1/4 cup or 1/3 cup.[23] Thus, the permitted serving-size increments

---

[17] 21 C.F.R. § 101.13(b).
[18] 21 C.F.R. § 101.13(i)(3).
[19] 21 C.F.R. § 101.13(n).
[20] 21 C.F.R. § 101.9(b)(1)–(2).
[21] 21 C.F.R. § 101.12(b).
[22] 21 C.F.R. § 101.9(b)(2)(iii).
[23] 21 C.F.R. § 101.9(b)(5)(i).

include 1/2 cup, 2/3 cup, and 3/4 cup, and Chobani must select the permitted increment that most closely approximates the applicable 170-gram reference amount.

46.    The declared serving size must be followed by its equivalent metric quantity in grams.[24] That metric quantity represents the amount of Product contained in the properly determined household serving measure and provides the basis for the nutrient amounts declared per serving.

47.    Federal regulations require the grams of protein in a serving to be stated to the nearest whole gram.[25]

48.    Chobani declares a serving size of 3/4 cup, or 190 grams, for the 32-ounce Products.[26] Chobani then uses that declared serving size to state that the Products contain 20 grams of protein per serving.[27]

49.    Using Chobani's own declared weight of 190 grams for 3/4 cup, 170 grams of the Products equates to approximately 0.671 cups.

50.    Under the FDA's serving-size rules, 0.671 cups should be rounded to the closest permitted cup increment. The closest permitted cup increment is 2/3 cup, not 3/4 cup.

51.    Thus, the properly calculated serving size for the Products is 2/3 cup, with an equivalent metric quantity of approximately 169 grams.

52.    Because Chobani's own label represents that 190 grams of the Products contain 20 grams of protein, a properly calculated 169-gram serving contains approximately 17.8 grams of protein.

---

[24] 21 C.F.R. § 101.9(b)(7).
[25] 21 C.F.R. § 101.9(c)(7).
[26] *Chobani 20g Protein Vanilla Greek Yogurt—32 oz.*, *supra* note 6.
[27] *Id.*

53.    Put differently, the Products are not protein-dense enough to provide 20 grams of protein in a properly calculated serving. To reach 20 grams of protein, a consumer must consume approximately 190 grams of the Product, rather than the properly calculated serving of approximately 169 grams.

54.    By using the inflated 190 gram serving size, Chobani makes the Products appear to deliver more protein per serving, and therefore appear more protein-dense, than they actually are under the applicable serving size rules.

55.    Under applicable rounding rules, the Products should therefore be labeled as containing approximately 18 grams of protein per serving, not 20 grams of protein per serving.

56.    Chobani's 20G Protein Claims are therefore false, misleading, and likely to deceive reasonable consumers because the Products are not protein-dense enough to provide 20 grams of protein per properly calculated serving. Chobani knew or should have known that its calculation of the serving size was incorrect, yet still made the 20G representations on its label.

57.    Reasonable consumers viewing the Products' labels understand the 20G Protein Claims to mean that the Products are protein-dense enough to provide 20 grams of protein in each standardized and properly calculated serving.

58.    Reasonable consumers also believe that the serving size displayed on the Products' labels is accurate, lawful, and calculated in accordance with applicable food-labeling requirements.

59.    Consumers do not reasonably expect Chobani to inflate the Products' serving size to create the appearance that the Products are more protein-dense than they actually are.

60.    Reasonable consumers cannot determine the Products' properly calculated serving size or actual protein content at the point of sale because the RACC is not listed on the label. A consumer would need to review federal regulations and perform math to obtain the proper serving

size. The Products' labels do not disclose that Chobani selected a serving size that does not most closely approximate the applicable 170-gram reference amount.

61.     Determining the properly calculated serving size requires consumers to understand and apply federal food-labeling regulations, convert the applicable reference amount into a household measure, identify the closest permitted serving size increment, calculate the corresponding metric quantity, and then recalculate the amount of protein contained in that serving.

62.     Reasonable consumers are not expected to perform these regulatory and mathematical calculations while shopping. They are entitled to rely on Chobani's prominent 20G Protein Claims and its representation that the Products provide 20 grams of protein per properly-calculated yogurt serving.

63.     The difference between 20 grams of protein and approximately 18 grams of protein is material to reasonable consumers, particularly consumers who purchase high-protein yogurt products to meet daily protein goals, support exercise or weight management goals, or compare protein density of competing products.

64.     Chobani knew or should have known that consumers rely on front-label protein claims when deciding whether to purchase the Products. Chobani's own research showed that the amount of protein per serving is one of the leading factors consumers consider when evaluating protein intake.[28]

65.     Chobani's challenged labeling also deprives consumers of the ability to make accurate product comparisons. A consumer comparing high-protein yogurts at the point of sale would reasonably compare the number of grams of protein per serving displayed on each product's label to determine which product provides more protein in a comparable amount of yogurt.

---

[28] *Americans Are Prioritizing Protein Now More Than Ever*, *supra* note 1.

66.    By representing that the Products contain 20 grams of protein per serving, Chobani caused reasonable consumers to believe the Products provide more protein per serving than they actually provide.

67.    Chobani's misrepresentations allowed it to charge, and required consumers to pay, a price premium for the Products based on the represented protein content.

68.    Had Plaintiffs and Class members known that the Products do not contain 20 grams of protein per properly calculated serving, they would not have purchased the Products.

69.    As a result of Chobani's unlawful, false, misleading, and deceptive labeling and advertising, Plaintiffs and Class members did not receive the benefit of their bargain and paid for Products that were worth less than represented.

## CLASS ALLEGATIONS

70.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3).

71.    Plaintiffs bring this action on behalf of themselves and all members of the following Class and Subclasses of similarly situated persons:

**Nationwide Class**
All persons who, while in the United States, purchased Chobani 20G Protein Greek yogurt sold in 32-ounce, multi-serving containers.

**California Subclass**
All persons who, while in California, purchased Chobani 20G Protein Greek yogurt sold in 32-ounce, multi-serving containers.

**Illinois Subclass**
All persons who, while in Illinois, purchased Chobani 20G Protein Greek yogurt sold in 32-ounce, multi-serving containers.

72.    Excluded from the Class are Chobani, LLC and its affiliates, parents, subsidiaries, employees, officers, agents, board members, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge.

14

73.    Certification of Plaintiffs' claims for class wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

74.    The members of the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable.

75.    Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   a.  whether Defendant engaged in the conduct alleged;

   b.  whether Defendant misrepresented the protein density of the Products or mislabeled them;

   c.  whether Defendant's 20G Protein claims were false, deceptive, or likely to mislead a reasonable person;

   d.  whether Plaintiffs and other Class members paid for a product that they did not receive;

   e.  whether Plaintiffs and the other Class members have been damaged, and if so, the measure of such damages;

   f.  whether Defendant unjustly retained a benefit conferred by Plaintiffs and the other Class members; and

   g.  whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, and injunctive relief.

76.    Chobani engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

77.     Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members.

78.     Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs is an adequate representative of the Class in that they have no interests adverse to, or that conflict with, the Class she seeks to represent. Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

79.     A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole. Defendant has directed its conduct to all consumers in a uniform manner. Defendant still represents that the Products contain 20G Protein per serving. Therefore, injunctive relief on a class wide basis is necessary to prevent Defendant's misconduct from causing continuing harm to Plaintiffs and the other Class members.

80.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a

potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

81.    Inadequacy of legal remedies. In the alternative to those claims seeking remedies at law, Plaintiffs and Class members allege that no plain, adequate, and complete remedy exists at law to address Defendant's fraudulent, unlawful, and unfair business practices. The legal remedies available to Plaintiffs are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief, including because their equitable claims will be tried to the Court instead of a jury. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded when the entitlement to damages may prove difficult. Thus, restitution would allow recovery even when normal considerations associated with damages would not. Furthermore, the standard and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs, and for quasi-contract/unjust enrichment, are different from the standard that governs a legal claim. For example, the UCL unlawful and unfairness claims do not require a showing of falsity, deception, or scienter. Also, the UCL unlawful claim can be premised on pure violations of law, like California's Sherman Law, including in the absence of underlying fraud.

## CAUSES OF ACTION

### COUNT I
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (UCL)**
**Business & Professions Code § 17200 *et seq.* ("UCL")**
**(By Plaintiff Pitre Individually and on behalf of the California Subclass)**

82.    Plaintiff Pitre realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

83. Plaintiff Pitre brings this claim individually and on behalf of the California Subclass.

84. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

85. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

*Unlawful*

86. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

   a. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; and

   b. The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

87. The Federal Food, Drug, and Cosmetic Act (FDCA) prohibits "The introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a). A product that is "adulterated" or "misbranded" cannot legally be manufactured, advertised, distributed, or sold. 21 U.S.C. § 331(a).

88. The FDCA expressly authorizes state laws that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

89. Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.* ("Sherman Law"), California has adopted the federal food labeling requirements as its own. *E.g., id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec.

18

343(q)) of the federal act and the regulations adopted pursuant thereto.");[29] *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.").

90.     Pursuant to Cal. Health & Safety Code § 110760, "[i] is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded."

91.     As described above, the Products are thus labeled and misbranded in violation of FDA regulations incorporated by California's Sherman Law as to protein content and standardized serving size.

92.     Additionally, Defendant's labeling herein violates Cal. Health & Safety Code § 110660 and 21 U.S.C. § 343(a), which both deem a food misbranded if its labeling is "false or misleading in any particular." As described above, the Products' labeling suggests it contains 20g of protein per standardized serving size in multi-serving containers, so consumers may easily compare the protein density of the Products against other lawfully labeled yogurts.

93.     Defendant's voluntary and affirmative misrepresentations challenged herein "fail[ed] to reveal facts that are . . . material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1), and accordingly in violation of the Sherman Law.

*Unfair*

---

[29] 21 U.S.C. § 343(q) states in part that a food is "misbranded" unless "its label or labeling bears nutrition information that provides-(A)(i) the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food . . ." and permits regulations enacted thereunder by the FDA.

94.    Defendant's conduct with respect to the labeling, advertising, and sale of the Product was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

95.    Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the California Consumers Legal Remedies Act, the California False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

96.    Defendant's conduct was unfair in that in violated established public policies of the State of California, and injured consumers with no corresponding benefit to consumers or competition. Indeed, there can be no benefit to consumers or competition in Defendant's mislabeled Product.  Consumers could not avoid the injury alleged herein because Defendant failed to adequately disclose the true protein per standardized serving in the Product. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

97.    Defendant's conduct was unfair because it offends public policy; is immoral, unethical, or oppressive; and causes substantial injury to consumers. As explained above, Chobani inflated the serving size of its 32-oz containers, which is inconsistent with industry and customary practices, in order to gain an unfair competitive advantage in the marketplace. Other companies lawfully competing in the marketplace were required to use standardized and customary serving

sizes in their 32-oz containers, which Chobani disregarded. Chobani's unfair conduct prevented reasonable consumers from fairly comparing the Products against other Greek yogurts in the marketplace.

***Deceptive/Fraudulent***

98.     A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth herein, Defendant's claims relating the representations and omissions stated on the Products' labeling and marketing statements mislead reasonable consumers inasmuch as they misrepresent the amount of protein per standardized serving.

99.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised Product to unsuspecting consumers.

100.    Plaintiff Pitre and the California Subclass are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate unlawful and misleading information on the Product's packaging. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

101.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff Pitre and the California Subclass. Plaintiff Pitre suffered injury in fact as a result of Defendant's unlawful conduct, including economic injury. Because of Defendant's unscrupulous and unethical conduct, consumers have lost substantial amounts of money purchasing the Products that use an incorrect serving size and do not contain 20 grams of protein per properly-calculated standard serving. Plaintiff Pitre and California Subclass members would not have purchased the Products, or would not have paid a premium for the Products, if they had known the Products' 20G Protein

21

Claims were based on an incorrect, non-standard serving size and the Products are therefore not as protein-dense and Defendant represents.

102.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Pitre and members of the California Subclass seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant. This includes an order requiring Defendant to provide modify its labeling to remove, or alternatively clarify, the challenged representations.

103.    In the alternative to any damages, Plaintiff Pitre and the California Subclass seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts collected by Defendant due to the selling of the Product to Plaintiff Pitre and the Subclass during the four years preceding the filing of this Complaint.

**COUNT II**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750 *et seq.* ("CLRA")**
**(By Plaintiff Pitre Individually and on behalf of the California Subclass)**

104.    Plaintiff Pitre realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

105.    Plaintiff Pitre brings this claim individually and on behalf of the California Subclass.

106.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

107.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or

household purposes by Plaintiff Pitre and the California Subclass, and violated and continue to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

108. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unsuspecting consumers.

109. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

110. Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Pitre is providing written notice to Defendant of this claim via certified mail. At this time, because the 30-day notice period has not expired, Plaintiff Pitre does not seek money damages under this count and only seeks equitable and injunctive relief to the extent permitted by the CLRA.

111. Pursuant to California Civil Code § 1780, Plaintiff Pitre seeks injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT III
## UNJUST ENRICHMENT/QUASI-CONTRACT
**(By Plaintiffs Individually and on Behalf of the Nationwide Class and, alternatively, the California Subclass and Illinois Subclass)**

112. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

113.    Plaintiffs plead this claim in the alternative to their remaining claims.

114.    Defendant has been unjustly enriched to Plaintiffs' and the Class members' detriment as a result of its unlawful and wrongful retention of money conferred by Plaintiffs and the other Class members, such that Defendant's retention of their money would be inequitable.

115.    Defendant's unlawful and wrongful acts, as alleged above, enabled Defendant to unlawfully receive monies it would not have otherwise obtained.

116.    Plaintiffs and the Class members have conferred benefits on Defendant, which Defendant has knowingly accepted and retained.

117.    Defendant's retention of the benefits conferred by Plaintiffs and the Class members would be against fundamental principles of justice, equity, and good conscience.

118.    Plaintiffs and the Class members seek to disgorge Defendant's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiffs and the other Class members.

119.    Plaintiffs and the other Class members are entitled to the imposition of a constructive trust upon Defendant, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiffs and the other Class members.

## COUNT IV
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL")
### (By Plaintiff Pitre Individually and on behalf of the California Subclass)

120.    Plaintiff Pitre realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

121.    Plaintiff Pitre brings this claim individually and on behalf of the California Subclass.

24

122.    The FAL makes it unlawful "to make or disseminate or cause to be made or disseminated" "any advertising device . . . which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

123.    Defendant's representations described herein, including the 20G Protein Claims, are advertisements under the FAL.

124.    Defendant is responsible for producing the Products, determining the Products' protein content, calculating the correct serving size for the Products, and creating and approving the labels and nutrition information on the Products and advertisements for the Products. As such, Defendant knew or should have known that the 20G Protein Claims were based on an incorrectly calculated serving size and that the Products are not as protein dense as consumers are led to believe.

125.    The 20G Protein Claims are actually misleading and have a capacity, likelihood, or tendency to deceive or confuse consumers about the protein density of the Products.

126.    The advertisements, labeling, representations, statements, policies, acts, and practices described herein were intended to, and did, induce Plaintiff Pitre and California Subclass members to purchase the Products by misrepresenting the protein density of the Products.

127.    Plaintiff Pitre and California Subclass members reasonably relied on Defendant's 20G Protein Claims when purchasing the Products. Had Plaintiff Pitre and California Subclass members known the 20G Protein Claims were false or misleading based on a non-standardized and inflated service size, they would not have purchased the Products or would not have paid a premium for the Products.

25

128.    As a result, Plaintiff Pitre and the California Subclass are entitled to injunctive and equitable relief, restitution, and an order for the restitutionary disgorgement of the funds by which Defendant was unjustly enriched.

**COUNT V**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS 505/1, *et seq.* ("ICFA")**
**(By Plaintiff Kinderman Individually and on behalf of the Illinois Subclass)**

129.    Plaintiff Kinderman realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

130.    Plaintiff Kinderman brings this claim on behalf of herself and on behalf of the members of the Illinois Subclass.

131.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce. Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

132.    Chobani is a "person" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1(c).

133.    Chobani offered and continues to offer the Products in the State of Illinois.

134.    Plaintiff Kinderman and the Illinois Subclass members are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(e).

135.    Plaintiff Kinderman and the Illinois Subclass members purchased the Products for personal, family, or household purposes.

26

136. Chobani's unfair and deceptive acts or practices occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

137. Chobani's conduct was unfair because it offends public policy; is immoral, unethical, or oppressive; and causes substantial injury to consumers. As explained above, Chobani inflated the serving size of its 32-oz containers, which is inconsistent with industry and customary practices, in order to gain an unfair competitive advantage in the marketplace. Other companies lawfully competing in the marketplace were required to use standardized and customary serving sizes in their 32-oz containers, which Chobani disregarded. Chobani's unfair conduct prevented reasonable consumers from fairly comparing the Products against other Greek yogurts in the marketplace.

138. Chobani knew or should have known that its representations that the Products contained 20 grams of protein per serving were unfair, misleading, and inaccurate because Chobani improperly calculated the serving size of the Products.

139. Chobani had a duty to Plaintiff Kinderman and the Illinois Subclass members to disclose its misrepresentations, including that it was not using the customary and standardized serving size, because:

   a. Chobani was in a superior position to know the true state of facts about the Products;

   b. Plaintiff Kinderman and the Class members could not reasonably have been expected to learn or discover that the Products did not have the protein density that Chobani represented based on standardized serving sizes; and

   c. Chobani knew that Plaintiff Kinderman and the Class members could not reasonably have been expected to learn about its misrepresentations.

27

140. Chobani's unfair practices, and misrepresentations Chobani made to Plaintiff Kinderman and the Illinois Subclass, are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Products or pay a lesser price. Had Plaintiff Kinderman and the Illinois Subclass known the Products did not contain the protein density that Chobani represented based on a properly calculated serving size, they would not have purchased the Products or would have paid less for them.

141. Chobani's conduct caused Plaintiff Kinderman's and Illinois Subclass members' damages as alleged.

142. As a result of Chobani's wrongful conduct, Plaintiff Kinderman and the Illinois Subclass have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 Ill. Comp. Stat. 505/1, *et seq.*

**COUNT VI**
**VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**815 ILCS 510/1, *et seq.* ("UDTPA")**
**(By Plaintiff Kinderman Individually and on behalf of the Illinois Subclass)**

143. Plaintiff Kinderman realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

144. Plaintiff Kinderman brings this claim on behalf of herself and on behalf of the members of the Illinois Subclass.

145. 815 ILCS 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

28

. . . (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

146. Chobani is a "person" within the meaning of 815 ILCS 510/1(5).

147. The Products sold to Plaintiff Kinderman and the Illinois Subclass were not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by Chobani.

148. The Products sold to Plaintiff Kinderman and the Illinois Subclass were not of the particular standard, quality, and/or grade represented by Chobani.

149. Chobani caused to be made or disseminated through Illinois and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Chobani should have known to be untrue and misleading to consumers, including Plaintiff and other Class members.

150. Chobani has violated the Illinois Uniform Deceptive Trade Practices Act because its unfair business practices, misrepresentations, and omissions regarding the protein density of the Products were material and likely to deceive a reasonable consumer.

151. Plaintiff Kinderman and the other Illinois Subclass members have suffered injuries in fact, including the loss of money or property, resulting from Chobani's unfair, unlawful, and/or deceptive practices. In purchasing the Products, Plaintiff Kinderman and the other Illinois Subclass members relied on Chobani's misrepresentations with respect to the protein density of the Products based on the customary and standardized serving size. Had Plaintiff Kinderman and the other Illinois Subclass members known this, they would not have purchased the Products or would not

29

have paid as much for them. Accordingly, Plaintiff Kinderman and the other Illinois Subclass members did not receive the benefit of their bargain.

152. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Chobani's business.

153. Chobani's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiff Kinderman and the Illinois Subclass.

154. Chobani knows purchasers of the Products prioritize protein intake and consider a food's protein density when deciding to purchase the food product. Chobani engaged in the wrongful conduct described herein with the intent to and for the purposes of inducing Plaintiff Kinderman and Illinois Subclass members to purchase the Products and/or pay an inflated price for the Products.

155. As a result of the foregoing unfair and wrongful conduct of Chobani, Plaintiff Kinderman and the Illinois Subclass have been damaged in an amount to be proven at trial, including, but not limited to actual and punitive damages, equitable relief and reasonable attorneys' fees.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all other members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

B. Appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel;

C.      Awarding Plaintiffs and the other Class members actual, compensatory, statutory, and consequential damages;

D.      Awarding Plaintiffs and the other Class members declaratory and injunctive relief;

E.      Awarding Plaintiffs and the other Class members restitution and disgorgement;

F.      Imposing a constructive trust for the benefit of Plaintiffs and the other Class members on the unjustly retained benefits conferred by Plaintiffs and the other Class members upon Defendant;

G.      Awarding Plaintiffs and the other Class members reasonable attorneys' fees, costs, and expenses; and

H.      Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 7, 2026                                Respectfully submitted,

/s/ Ben Barnow
Ben Barnow
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

Alexander E. Wolf*
**MILBERG, PLLC**
awolf@milberg.com
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

*Counsel for Plaintiff*
**Pro hac vice* forthcoming

31